UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| 6D GLOBAL TECHNOLOGIES, INC., and SIX DIMENSIONS, INC., | : | |
| Plaintiffs, | : : | Civil Action No. |
| v. | : : | |
| ADAM WARE, JOHN KOENIG, MICHAEL ARNESEN, MICHAEL WIENICK, KATHERINE SACHSE, PETER RACHOR, | : : | |
| Defendants. | : : : : | |

## COMPLAINT FOR FRAUD; BREACH OF CONTRACT; UNJUST ENRICHMENT; CONVERSION; CONSTRUCTIVE TRUST; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; INTERFERENCE WITH CONTRACTUAL RELATIONS AND CONSPIRACY

### Parties

1.  Plaintiff, 6D GLOBAL TECHNOLOGIES, INC. ("6D"), is a corporation organized and existing under the laws of the state of Delaware and is authorized to do business in New York as a Foreign Business Corporation with its principal place of business at 17 State Street, Suite 2550, New York, New York 10004.

2.  Plaintiff, Six Dimensions, Inc. ("Dimensions"), is a corporation organized and existing under the laws of Nevada and is authorized to do business in New York as a Foreign Business Corporation with its principal place of business at 17 State Street, Suite 2550, New York, New York 10004.

3. Defendant, ADAM WARE ("AW"), is an individual who, based upon information and belief, resides at 6211 Hummingbird Rd., Excelsior, Minnesota 55331.

4. Defendant, JOHN KOENIG ("JK"), is an individual who, based upon information and belief, resides at 5237 NE 29th Ave., Portland, Oregon 97211.

5. Defendant, MICHAEL ARNESEN ("MA"), is an individual who, based upon information and belief, resides at 212 SW 171st Place, Beaverton, Oregon 97006.

6. Defendant, MICHAEL WIENICK ("MW"), is an individual who, based upon information and belief, resides at 9510 N Edison St., Portland, Oregon 97203.

7. Defendant, KATHERINE SACHSE ("KS"), is an individual who, based upon information and belief, resides at 2737 E. 39th Place, Tulsa, Oklahoma 74105.

8. Defendant, PETER RACHOR ("PR"), is an individual who, based upon information and belief, resides at 143 NE Cook St., Portland, Oregon 97212.

### Jurisdiction and Venue

9. Jurisdiction is founded under 28 U.S.C. § 1332 because Plaintiffs and Defendants have diversity of citizenship and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue is founded under 28 U.S.C. §§ 1391 because Defendants have contractually consented to the jurisdiction of the federal courts located in Manhattan (New York City).

### Facts

11. 6D is a digital marketing firm providing software application support to its corporate customers as well as inventive and digital marketing alternatives.

2

12. Dimensions is a wholly-owned subsidiary of 6D providing the same services as 6D to its customers.

13. Swellpath, Inc. was an Oregon corporation specializing in digital analytics, consulting, website optimization services, search engine optimization, and digital and social media advertising ("Swellpath").

14. Swellpath was founded and co-owned by AW and JK (collectively "Shareholders"), and had four additional equity rights holders, MA, MW, KS, and PR (collectively "Right Holders").

15. In or about March, 2015, 6D, Swellpath, the Shareholders, and the Right Holders (the Shareholders and Right Holders are collectively referred to herein as the "Sellers") entered into that certain Securities Purchase Agreement dated March 19, 2015 whereby 6D acquired Swellpath (the "SPA").

16. In accordance with the SPA, 6D purchased and the Shareholders and Right Holders sold their entire interests in Swellpath to 6D, in exchange for $300,000 and 300,000 shares of 6D's common stock, which was valued at approximately $6 to $7 per share.

17. On or about March 18, 2015, Dimensions and AW entered into that certain Employment Agreement whereby AW agreed to be employed by Dimensions to serve in the capacity of Vice President – Swellpath and Dimensions agreed to employ AW (the "Employment Agreement").

18. On or about March 20, 2015, 6D and AW entered into that certain Goodwill Purchase Agreement whereby 6D agreed to purchase AW's Goodwill in Swellpath (the "GPA").  Goodwill is defined in the GPA as "certain intellectual property,

3

know-how, close business relationships, goodwill ,trade secrets, processes, methods,

research records, knowledge and other information related thereto, owned by AW.

19. At the time 6D acquired Swellpath the following individuals were

employed by Swellpath in the positions designated and continued to be employed by

Swellpath post-acquisition:

| EMPLOYEE NAME | TITLE |
|---|---|
| Arnesen, Michael | Associate Director |
| Helleberg, Laura | Digital Analyst |
| Ierien, Benjamin | Paid Media Specialist |
| Okely, Molly | Paid Media Specialist |
| Rose, Kevin | Senior Technical Specialist |
| West, Chad | Director Sales |
| Wienick, Michael | VP Digital & Content Strategy |
| Woodward, Julia | Strategist |

20. All of these individuals employed by Swellpath subsequently resigned,

each as of the date listed in the chart below:

| SwellPath Employee Resignations Post Acquisition | | |
|---|---|---|
| EMPLOYEE NAME | TITLE | RESIGNATION DATE |
| Arnesen, Michael | Associate Director | 4/28/2015 |
| Helleberg, Laura | Digital Analyst | 6/26/2015 |
| Ierien, Benjamin | Paid Media Specialist | 12/31/2015 |
| Okely, Molly | Paid Media Specialist | 10/28/2015 |
| Rose, Kevin | Senior Technical Specialist | 1/22/2016 |
| West, Chad | Director Sales | 4/29/2016 |
| Wienick, Michael | VP Digital & Content Strategy | 4/30/2015 |
| Woodward, Julia | Strategist | 9/30/2015 |

21. On or about June 19, 2016, Dimensions terminated its Employment

Agreement with AW, for "Cause", effective as of June 30, 2016.

22. 6D is informed and believes, and based thereon alleges, that the Sellers represented to 6D that Swellpath was a stable company and maintained, and will continue to maintain post-acquisition, a stable and experienced employee base.

23. 6D is informed and believes, and based thereon alleges, that the Sellers represented to 6D that Swellpath maintained, and will continue to maintain post-acquisition a stable, continual and/or recurring customer base.

24. Article IX of the SPA entitled NON-COMPETITION; CONFIDENTIALITY states in 9.2 the following:

> "9.2 Non-Solicitation.  During the twenty-four (24) months following the Closing the ("Restricted Period"), Sellers shall not, directly or indirectly, hire, engage, offer to hire, divert, entice away, solicit or in any other manner persuade or attempt to persuade (a "Solicitation") any Person who is, or was, at any time within the twelve (12) month period prior to such Solicitation, an officer, director, employee, agent, licensor, licensee, customer, or supplier of Buyer, the company's to discontinue, terminate or adversely alter his or its relationship therewith."

25. Article IX of the SPA entitled NON-COMPETITION; CONFIDENTIALITY states in 9.3 the following:

> "9.3 Non-Disruption.  During the Restricted Period, Sellers shall not, directly or indirectly, interfere with, disrupt or attempt to disrupt any present or prospective relationship, contractual or otherwise, between Buyer or any of its Affiliates, on the one hand, and any of its customers, contractees, suppliers or employees, on the other hand."

## FIRST CAUSE OF ACTION

## FRAUD

26. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 25 as set forth hereinabove.

27. In conjunction with entering into the SPA, Defendants and/or AW, individually, represented to 6D that Swellpath's 2014 total income was $1,840,187.07 and that the total yearly income, post acquisition, would increase.

28. Defendants represented to 6D that they would remain as employees of Swellpath, post acquisition, and would devote their full time efforts to Swellpath to grow its business.

29. 6D reasonably relied on the material misrepresentations made by Defendant.

30. Defendants' conduct caused Plaintiff to suffer damages of at least $2,100,000.

31. Defendants engaged in fraud against 6D by making representations to 6D and making agreements and/or promises without the intention of carrying them out.

32. Because Defendants' conduct was willful, wanton, malicious, fraudulent and specifically intended to injure 6D, an award of attorneys' fees and punitive damages is warranted to deter Defendants from victimizing anyone again.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

33. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 32 as set forth hereinabove.

34. Plaintiff and Defendants entered into a legally binding contract pursuant to which 6D agreed to acquire Swellpath.

35. Plaintiff has fulfilled all of its obligations under the contract, by paying Defendants $300,000 plus 300,000 shares of 6D stock.

6

36. Defendants breached the contract by violating Section 9.2 of the SPA in that they caused or persuaded the employees listed in paragraph 19 to resign.

37. Defendants breached the contract by violating Section 9.3 of the SPA in that they interfered with and/or disrupted Swellpath's relationship with its employees listed in paragraph 19.

38. Defendants breached the contract by violating Section 9.3 of the SPA in that they interfered with and/or disrupted Swellpath's relationship with some of its customers.

39. Defendants' conduct caused Plaintiff to suffer monetary losses of at least $2,100,000.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT ALLEGED BY DIMENSIONS

### AGAINST AW

40. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 39 as set forth hereinabove.

41. Dimensions and Defendant, AW, entered into a legally binding contract pursuant to which Dimensions agreed to employ AW and AW agreed to be employed by Dimensions.

42. Plaintiff has fulfilled all of its obligations under the contract, by paying AW the agreed upon salary as provided for in the Employment Agreement.

43. Defendant AW breached the Employment Agreement by failing to make a good faith attempt to perform his duties with respect to Swellpath that were reasonably requested by Swellpath and/or 6D and/or Dimensions.

44. AW's conduct caused Plaintiff to suffer monetary losses of at least $260,000.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT ALLEGED BY 6D AGAINST AW

45. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 44 as set forth hereinabove.

46. 6D and AW entered into a legally binding contract pursuant to which 6D agreed to purchase and AW agreed to sell to 6D the Goodwill owned by him.

47. 6D has fulfilled all of its obligations under the contract, by paying AW $300,000 for his Goodwill in Swellpath.

48. Section 3.8 of the GPA states:

"3.8 Untrue or Misleading Statements. No representation or warranty contained in this Article III contains any untrue statement of a material fact or omits to state a material fact required to be stated herein or necessary in order to make the statements herein, in light of the circumstances under which they are made, not misleading."

49. One of the Proprietary Rights that AW sold to 6D pursuant to the GPA was "The Seller maintains relationships with current and potential clients, business partners, vendors, and service providers that will be capitalized on significantly in the future." (the "Proprietary Right").

50. The Proprietary Right contains an untrue statement of a material fact, making it misleading.

51. AW breached the GPA by failing to capitalize significantly on the Proprietary Right while employed by Dimensions.

52. AW's conduct caused 6D to suffer monetary losses of at least $300,000.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

53. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 52 as set forth hereinabove.

54. Defendants have obtained, and currently retain, a substantial benefit from 6D, namely $300,000 and 300,000 shares of 6D stock.

55. In justice and in equity, such benefit belongs to 6D, because 6D gave that sum to Defendants and received in return a different company than was represented by Defendants. In fact, 6D has lost a benefit as a result of Defendants' retention of the funds and stock, namely the ability to purchase a more viable, productive and revenue generating company than Swellpath.

56. Justice and equity also compel the return of such funds and stock to 6D because Defendants acquired such money and stock from 6D by fraud, deception and other wrongful means.

57. Defendants' continued retention of the above funds and stock constitutes unjust enrichment. Under the principles of equity and law, Defendants must disgorge such enrichment to 6D and make restitution to it.

58. Defendant's conduct has caused Plaintiff to suffer damages in the amount of at least $2,100,000.

## SIXTH CAUSE OF ACTION

### CONVERSION

59. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 58 as set forth hereinabove.

60. 6D has a right to possession of $300,000 in funds and 300,000 shares of 6D stock, since such was 6D's to begin with.

61. Defendants have retained the foregoing sum and stock without 6D's consent.

62. Defendants' conduct caused 6D to suffer damages in the amount of at least $2,100,000.

## SEVENTH CAUSE OF ACTION

### CONSTRUCTIVE TRUST

63. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 62 as set forth hereinabove.

64. Defendants have possession, custody, or control of some or all of the property belonging to 6D, namely $300,000 and 300,000 of 6D stock.

65. Defendants acquired their interest in such sum, and/or property, assets or benefits from such sum, by wrongful means, including fraud and deception.

66. Defendants' possession of such sum, and/or property, assets or benefits from such sum is specifically traceable to Defendants' wrongful conduct.

67. In good conscience, Defendants should not be allowed to retain such sum, and/or property, assets or benefits from such sum, because they properly belong to 6D and were taken from it through fraud and deception.

68. Accordingly, Defendants are constructive and involuntary trustees of such sum, and/or property, assets or benefits from such sum, and must account to 6D for same.

## EIGHT CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

69.  Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 68 as set forth hereinabove.

70. Defendants' conduct in misrepresenting Swellpath prevented 6D from receiving the fruits of the SPA and constitutes a breach of the implied covenant of good faith and fair dealing.

71. Defendants' conduct in contributing to the resignation of the employees listed in paragraph 20 above constitutes a breach of the implied covenant of good faith and fair dealing.

72. As a result of Defendants' wrongful acts, 6D has suffered damages of at least $2,100,000.  As a result of Defendants' wrongful acts, 6D has also incurred and will continue to incur attorneys' fees. 6D requests an award of attorneys' fees, according to proof.

## NINTH CAUSE OF ACTION

## INTERFERENCE WITH CONTRACTUAL RELATIONS

73.  Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 72 as set forth hereinabove.

74. 6D and/or Dimensions maintained valid and binding written and/or oral contracts for employment with those individuals listed in paragraph 20 above.

11

75. Defendants and/or AW knew of these employment contracts.

76. Defendants and/or AW interfered with these contracts by persuading such individuals to resign from Swellpath.

77. The acts of Defendants and/or AW which caused those individuals to resign were without justification.

78. As a result of Defendants and/or AW's interference with Swellpath's contracts with those individuals who resigned, Plaintiffs have been injured in an amount yet to be determined.

## TENTH CAUSE OF ACTION

### CONSPIRACY

79. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in paragraphs 1 through 78 as set forth hereinabove.

80. As alleged above, by effectuating the acquisition of Swellpath by 6D, Defendants, and each of them agreed and knowingly and willingly conspired between themselves to defraud 6D in entering into the purchase of Swellpath.

81. Under this conspiracy, Defendants agreed that they would defraud 6D by misrepresenting Swellpath.

82. Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

83. As a proximate result of the wrongful acts herein alleged, Plaintiffs have been damaged in the amount of at least $2,500,000 plus, interest and attorney fees.

84. Defendants intentionally, willfully, fraudulently and maliciously did the things alleged herein to defraud and oppress Plaintiffs. Plaintiffs are therefore entitled to exemplary and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, based on the above allegations, Plaintiffs pray for judgment against Defendants as follows:

1.     Compensatory damages in an amount to be proven at trial, but in an amount no less than $2,500,000, plus accrued interest at the maximum rate allowed under law;

2.     Disgorgement and restitution of the funds and stock Defendants obtained from 6D;

3.     Compensatory damages in favor of Dimensions against AW in an amount to be proven at trial, but in an amount no less than $260,000, plus accrued interest at the maximum rate allowed under law;

4.     Compensatory damages in favor of 6D against AW in an amount to be proven at trial, but in an amount no less than $300,000, plus accrued interest at the maximum rate allowed under law;

5.     Punitive damages in an amount sufficient to deter Defendants from engaging in further fraudulent conduct, or up to nine (9) times the amount of compensatory damages as constitutionally permitted;

6.     A constructive trust over 6D's funds to the extent that some or all of which are in the possession, custody, or control of Defendants and/or were used by Defendants to acquire other property, assets or benefits;

7.    For an award of Plaintiffs' costs of suit, including attorney's fees; and

8.    For such other relief as the Court deems just and necessary.

Dated: July 14, 2016

Steven S. Krane (SK 9044)
Steger Krane LLP
7600 Jericho Turnpike, Suite 300
Woodbury, NY 11797
(212) 736-6800
Attorneys for Plaintiffs