UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

6D GLOBAL TECHNOLOGIES and SIX
DIMENSIONS, INC.,

                    Plaintiffs,

                    v.

ADAM WARE, JOHN KOENIG, MICHAEL
ARNESEN, MICHAEL WIENICK, KATHERINE
SACHSE, PETER RACHOR,

                    Defendants.

-------------------------------------------------------- x

Case No.: 1:16-CV-05625
(PAE)

## RULE 7.1 STATEMENT

       Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned counsel for

Defendant, ADAM WARE certifies upon information and belief that the following are corporate

parents, subsidiaries, or affiliates which are publicly held:

       6D GLOBAL TECHNOLOGIES, INC. though this stock has been de-listed by NASDAQ.

Dated:     New York, New York
           October 14, 2016

                                Respectfully submitted,

                                By:_____
                                 Peter Sverd, Esq (6754)
         The Law Offices of Peter Sverd PLLC
                  Attorneys for Defendant Adam Ware
                  225 Broadway, Suite 613
                  New York, New York 10007
                  (646) 751-8743

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

6D GLOBAL TECHNOLOGIES and SIX
DIMENSIONS, INC.,

                           Plaintiffs,

                    v.

ADAM WARE, JOHN KOENIG, MICHAEL
ARNESEN, MICHAEL WIENICK,
KATHERINE SACHSE, PETER RACHOR,

                           Defendants.

-------------------------------------------------------- x

Case No.: 1:16-CV-05625
(PAE)

The Defendant, ADAM WARE (hereinafter referred to as "AW" or "Answering Defendant" or "Mr. Ware") answering the Complaint of the Plaintiffs, 6D GLOBAL TECHNOLOGIES and SIX DIMENSIONS, INC. represents and alleges as follows:

**<u>Parties</u>**

1.      The Answering Defendant admits the allegations contained in paragraph numbered "1" of the Complaint.

2.      The Answering Defendant admits the allegations contained in paragraph numbered "2" of the Complaint.

3.      The Answering Defendant admits the allegations contained in paragraph numbered "3" of the Complaint.

4.      The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "4" of the Complaint, but admits that the said person is an "individual."

5.      The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "5" of the Complaint, but admits that the said person is an "individual."

6.      The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "6" of the Complaint, but admits that the said person is an "individual."

7.      The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "7" of the Complaint, but admits that the said person is an "individual."

8.      The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "8" of the Complaint, but admits that the said person is an "individual."

**Jurisdiction and Venue**

9.      The Answering Defendant admits the allegations contained in paragraph numbered "9" of the Complaint.

10.      The Answering Defendant admits the allegations contained in paragraph numbered "10" of the Complaint.

**Facts**

11.      The Answering Defendant admits the allegations contained in paragraph numbered "11" of the Complaint.

12.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "12" of the Complaint, but admits that Dimensions is at least partially owned by 6D.

13.     The Answering Defendant admits the allegations contained in paragraph numbered "13" of the Complaint.

14.     The Answering Defendant admits the allegations contained in paragraph numbered "14" of the Complaint.

15.     The Answering Defendant admits the allegations contained in paragraph numbered "15" of the Complaint.

16.     The Answering Defendant admits the allegations contained in paragraph numbered "16" of the Complaint.

17.     The Answering Defendant admits the allegations contained in paragraph numbered "17" of the Complaint.

18.     The Answering Defendant admits the allegations contained in paragraph numbered "18" of the Complaint, but denies that "Goodwill" in the GPA is defined as alleged in said paragraph, and The Court is referred to the GPA itself for the definition of "Goodwill" under the GPA.

19.     The Answering Defendant admits the allegations contained in paragraph numbered "19" of the Complaint.

20.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "20" of the Complaint.

21.     The Answering Defendant denies the allegations contained in paragraph numbered "21" of the Complaint, but admits that AW was terminated by letter dated June 29, 2016, for "Cause" effective as of June 30, 2016.

22.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "22" of the Complaint, and refers The Court to the representations contained in the written agreements entered into between the parties hereto.

23.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "23" of the Complaint, and refers The Court to the representations contained in the written agreements entered into between the parties hereto.

24.     The Answering Defendant admits the allegations contained in paragraph numbered "24" of the Complaint, but refer all questions of law with respect to same to The Court for determination.

25.     The Answering Defendant admits the allegations contained in paragraph numbered "25" of the Complaint, but refer all questions of law with respect to same to The Court for determination.

## FIRST CAUSE OF ACTION: FRAUD

26.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through  "25" as if more fully set forth herein.

27.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "27" of the Complaint with respect to the other defendants, and denies the allegations contained in

4

paragraph numbered "27" of the Complaint, and refers The Court to the representations contained in the written agreements entered into between the parties hereto.

28.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "28" of the Complaint with respect to the other defendants, and admits the remaining allegations contained therein, but clarifies that the Answering Defendant entered into an Employment Agreement with Six Dimensions, Inc., to wit he was to serve as the Vice President of SwellPath.

29.     The Answering Defendant denies knowledge and information sufficient to form a belief as to the operation of the plaintiff's mind as is alleged in paragraph numbered "29" of the Complaint, and refers all questions of law to The Court for determination.

30.     The Answering Defendant denies the allegations contained in paragraph numbered "30" of the Complaint.

31.     The Answering Defendant denies the allegations contained in paragraph numbered "31" of the Complaint.

32.     The Answering Defendant denies the allegations contained in paragraph numbered "32" of the Complaint.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

33.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "32" as if more fully set forth herein.

34.     The Answering Defendant denies the allegations contained in paragraph numbered "34" of the Complaint, and refers all questions of law to the Court for determination. The Answering Defendant admits that 6D purchased all of the issued and

outstanding shares of SwellPath, along with all of the assets of SwellPath, and that the Answering Defendant entered into an Employment Agreement with Plaintiff, Six Dimensions, Inc., and a Good Will Purchase Agreement with Plaintiff 6D, and refers all questions of law to The Court for determination.

35.    The Answering Defendant denies the allegations contained in paragraph numbered "35" of the Complaint but admits that 6D paid the defendants $300,000 and issued 300,000 shares of stock to the defendants in furtherance of the Plaintiffs' contractual obligations.

36.    The Answering Defendant denies the allegations contained in paragraph numbered "36" of the Complaint, as they pertain to him individually, and denies knowledge and information sufficient to form a belief as to the allegations with respect to the other named defendants.

37.    The Answering Defendant denies the allegations contained in paragraph numbered "37" of the Complaint, as they pertain to him individually, and denies knowledge and information sufficient to form a belief as to the allegations with respect to the other named defendants.

38.    The Answering Defendant denies the allegations contained in paragraph numbered "38" of the Complaint, as they pertain to him individually, and denies knowledge and information sufficient to form a belief as to the allegations with respect to the other named defendants.

39.    The Answering Defendant denies the allegations contained in paragraph numbered "39" of the Complain

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT ALLEGED BY DIMENSIONS AGAINST AW

40.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "39" as if more fully set forth herein.

41.     The Answering Defendant admits the allegations contained in paragraph numbered "41" of the Complaint, but refers all questions of law to The Court for determination.

42.     The Answering Defendant denies the allegations contained in paragraph numbered "42" of the Complaint.

43.     The Answering Defendant denies the allegations contained in paragraph numbered "43" of the Complaint.

44.     The Answering Defendant denies the allegations contained in paragraph numbered "44" of the Complaint.

## FOURTH CAUSE OF ACTION: BREACH OF CONTRACT ALLEGED BY 6D AGAINST AW

45.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through  "44" as if more fully set forth herein.

46.     The Answering Defendant admits the allegations contained in paragraph numbered "46" of the Complaint, but refers all questions of law to The Court for determination.

47.     The Answering Defendant denies the allegations contained in paragraph numbered "47" of the Complaint.

48.     The Answering Defendant admits the allegation contained in paragraph numbered "48" of the Complaint.

49.     The Answering Defendant admits the allegation contained in paragraph numbered "49" of the Complaint, and refers all questions of law as to the import and legal effects of same, to The Court for determination.

50.     The Answering Defendant denies the allegations contained in paragraph numbered "50" of the Complaint.

51.     The Answering Defendant denies the allegations contained in paragraph numbered "51" of the Complaint.

52.     The Answering Defendant denies the allegations contained in paragraph numbered "52" of the Complaint.

## FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT

53.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "52" as if more fully set forth herein.

54.     The Answering Defendant denies the allegations contained in paragraph numbered "54" of the Complaint but admits that 6D paid the defendants $300,000 and issued 300,000 shares of 6D stock.

55.     The Answering Defendant denies the allegations contained in paragraph numbered "55" of the Complaint.

56.     The Answering Defendant denies the allegations contained in paragraph numbered "56" of the Complaint.

57.     The Answering Defendant denies the allegations contained in paragraph numbered "57" of the Complaint.

58.     The Answering Defendant denies the allegations contained in paragraph numbered "58" of the Complaint.

## SIXTH CAUSE OF ACTION: CONVERSION

59.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "58" as if more fully set forth herein.

60.     The Answering Defendant denies the allegations contained in paragraph numbered "60" of the Complaint.

61.     The Answering Defendant denies the allegations contained in paragraph numbered "61" of the Complaint.

62.     The Answering Defendant denies the allegations contained in paragraph numbered "62" of the Complaint.

## SEVENTH CAUSE OF ACTION: CONSTRUCTIVE TRUST

63.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "62" as if more fully set forth herein.

64.     The Answering Defendant denies the allegations contained in paragraph numbered "64" of the Complaint.

65.     The Answering Defendant denies the allegations contained in paragraph numbered "65" of the Complaint.

66.     The Answering Defendant denies the allegations contained in paragraph numbered "66" of the Complaint.

67.     The Answering Defendant denies the allegations contained in paragraph numbered "67" of the Complaint.

68.     The Answering Defendant denies the allegations contained in paragraph numbered "68" of the Complaint.

## EIGHTH CAUSE OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

69.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "68" as if more fully set forth herein.

70.     The Answering Defendant denies the allegations contained in paragraph numbered "70" of the Complaint and refers questions of law for The Court to determine, and denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants.

71.     The Answering Defendant denies the allegations contained in paragraph numbered "71" of the Complaint and refers questions of law for The Court to determine, and denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants.

72.     The Answering Defendant denies the allegations contained in paragraph numbered "66" of the Complaint.

## NINTH CAUSE OF ACTION: INTERFERENCE WITH CONTRACTUAL RELATIONS

73.     The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "72" as if more fully set forth herein.

74.     The Answering Defendant denies the allegations contained in paragraph numbered "74" of the Complaint, but admits that he had an employment contract with Dimensions, and refers questions of law for The Court to determine.  Answering defendant

denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants and 6D and/or Dimensions.

75.    The Answering Defendant denies the allegations contained in paragraph numbered "75" of the Complaint, but admits that he knew of his own employment contract with Dimensions, and refers questions of law for The Court to determine.   Answering defendant denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants and 6D and/or Dimensions.

76.    The Answering Defendant denies the allegations contained in paragraph numbered "76" of the Complaint as they pertain to him.   Answering defendant denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants and 6D and/or Dimensions.

77.    The Answering Defendant denies the allegations contained in paragraph numbered "77" of the Complaint as they pertain to him.   Answering defendant denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants and 6D and/or Dimensions.

78.    The Answering Defendant denies the allegations contained in paragraph numbered "78" of the Complaint.

## TENTH CAUSE OF ACTION: CONSPIRACY

79.    The Answering Defendant repeats and realleges the allegations contained in paragraphs numbered "1" through "78" as if more fully set forth herein.

80.    The Answering Defendant denies the allegations contained in paragraph numbered "80" of the Complaint as they pertain to him.   Answering defendant denies

knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants.

81.     The Answering Defendant denies the allegations contained in paragraph numbered "81" of the Complaint as they pertain to him.  Answering defendant denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants.

82.     The Answering Defendant denies the allegations contained in paragraph numbered "82" of the Complaint as they pertain to him.  Answering defendant denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants.

83.     The Answering Defendant denies the allegations contained in paragraph numbered "83" of the Complaint.

84.     The Answering Defendant denies the allegations contained in paragraph numbered "84" of the Complaint as they pertain to him.  Answering defendant denies knowledge and information sufficient to form a belief as to the said allegations with respect to the other defendants.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

85.     The complaint which alleges violations of the SPA and Goodwill Purchase Agreement, fails to state a claim upon which relief can be granted, under Delaware Law.

86.     The complaint which alleges violations of the Employment Agreement fails to state a claim upon which relief can be granted, under Nevada Law.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

87.     The Plaintiff's fraud claims are based upon mere breach of contract and allege no independent tortious conduct.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

88.     The Plaintiff's claims are barred by unclean hands, waiver, and estoppel.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

89.     The Plaintiff's conduct is the sole cause of its own damages.

## AS AND FOR A FITH AFFIRMATIVE DEFENSE

90.     A defense rests upon documentary evidence; namely, the Stock Purchase Agreement, Goodwill Purchase Agreement, and the Employment Agreement which are the basis of this lawsuit.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

91.     The Plaintiff's reliance upon the contractual provisions, which make up the gravamen of the Plaintiff's complaint is not justifiable, as a matter of law.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

92.     The damages alleged to have been suffered by the Plaintiff are wholly dependent upon the future exercise of choice by third parties and are not cognizable, as a matter of law.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

93.     The breach of contract damages alleged by the Plaintiffs are speculative.

## AS AND FOR AN NINTH AFFIRMATIVE DEFENSE

94.     The fraud, conspiracy, interference with contractual relations, and conversions allegations are not plead with particularity.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

95.     The Plaintiffs action against the Answering Defendant is frivolous, is utterly devoid of merit, and is sanctionable.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

96.     The Answering Defendant has not been unjustly enriched, to with the money he received and stock he received were for fair and reasonable consideration.

## AS AND FOR THE ANSWERING DEFENDANT'S COUNTERCLAIMS

## JURISDICTION AND VENUE

97.     Jurisdiction is founded under 28 U.S.C. §1332 because Answering Defendant has diversity of citizenship and the matter in controversy exceeds $75,000, exclusive of interest and costs.

98.     Venue is founded under 28 U.S.C. §1391 because the Answering Defendant and the Plaintiffs have contractually consented to the jurisdiction of the federal courts located in the City and State of New York, New York County.

## FACTS IN SUPPORT OF COUNTERCLAIMS

99.     Adam Ware is a natural person residing in Minnesota.

100.     6D Global Technologies, Inc. is a Delaware corporation with principal executive offices located in this District at 17 State Street, 2550, New York, New York 10064. 6D Global is a citizen of Delaware.

101.     Six Dimensions, Inc. is a Nevada corporation and is authorized to do business in New York as a Foreign Business Corporation with its principal place of business at 17 State Street, 2550, New York, New York 10064.Six Dimensions is a citizen of Nevada.

102.    Six Dimensions, Inc. is a wholly owned subsidiary of 6D Global Technologies, Inc.

## AS AND FOR A FIRST COUNTERCLAIM
### *(Breach of Employment Contract)*

103.    The Answering Defendant repeats reiterates and realleges every allegation as if more fully set forth herein.

104.    Mr. Ware entered into an Employment Agreement with Six Dimensions, Inc., dated March 18, 2015 ("Employment Contract").

105.    The Employment Contract was for twenty-four months, beginning March 18, 2015 and ending on March 18, 2017.

106.    Pursuant to the terms of the Employment Contract Mr. Ware was entitled to receive a monthly salary of $14,583.33 per month.

107.    Pursuant to the terms of the Employment Contract Mr. Ware was entitled to quarterly commissions in the amount of 2.5% of (SwellPath) divisional Gross Profit, when consolidated Gross Margins exceeded 45%.

108.    Pursuant to the terms of the Employment Contract Six Dimension, Inc. was obligated to pay 100% of Mr. Ware, and his dependents' Medical, Dental, and Vision Insurance.

109.    Pursuant to the terms of the Employment Contract Six Dimension, Inc. was obligated to pay Mr. Ware eighteen (18) vacation days per calendar year.

110.    Pursuant to the terms of the Employment Contract Six Dimension, Inc. could terminate Mr. Ware for "cause" as follows:

> "7(b) By Company under this Agreement "For Cause" as that term is defined in sections (i)-(x), herein, upon written

15

notice to the Employee setting forth in reasonable detail the facts and circumstances giving rise to the purported For Cause within five (5) days of the initial discovery thereof."

111.     By correspondence dated June 29, 2016, Six Dimensions, 6D Global Technologies, Inc. company, by its Chief Executive Officer Tejune Kang, purported to terminate Mr. Ware For Cause. (hereinafter referred to as "Termination Letter.")

112.     Six Dimensions relied upon provision 7(b)(i) of the Employment Contract, in its Termination Letter, which provides:

> "The Employee's failure to make a good faith attempt to perform employee's duties with respect to the Company or any of its subsidiaries or affiliates that are reasonably requested by the Company."

113.     The Termination Letter contains the following alleged 'For Cause' incident(s) that occurred within five (5) days of their initial discovery (from June 29, 2016): "Employee not on track to meet the Q2 Quota by June 30, 2016."

114.     The Q2 quota deadline had not come to pass before the Termination Letter was sent, and the Plaintiff's reliance upon provision 7(b)(i) is defective.

115.     The Termination of Mr. Ware effective June 30, 2016.

116.     At the time of his termination, Mr. Ware was serving as the Vice President & Subject Matter Expert- a position which he had held from January 1, 2016.

117.     The failure of Mr. Ware to achieve the Q2 quota requirement was not the result of Mr. Ware's failure to make good faith attempt to perform his duties.

118.     Mr. Ware was terminated by the Plaintiff in violation of the Employment Contract.

119.    Mr. Ware has been damaged by the Plaintiff's wrongful termination of his employment.

## AS AND FOR A SECOND COUNTERCLAIM:
### *(Breach of Securities Purchase Agreement. Waiver: April 1, 2015 to March 31, 2016 )*

120.    The Answering Defendant repeats reiterates and realleges every allegation as if more fully set forth herein.

121.    Mr. Ware entered into a Stock Purchase Agreement with 6D Global Technologies, Inc., (hereinafter referred to as "6D Global") dated March 19, 2015 (hereinafter referred to as the "SPA").

122.    Pursuant to the SPA, SwellPath Inc., an Oregon Company was referred to as the "Company."

123.    Pursuant to the SPA, 6D Global was referred to as the "Buyer."

124.    Pursuant to the SPA each of the equityholders of the Company/ SwellPath were referred to as the Sellers.

125.    Pursuant to, and in accordance with the SPA, Mr. Ware was defined as a "Seller" of stock that he owned in the SwellPath Inc. (hereinafter referred to as "SwellPath").

126.    Pursuant to, and in accordance with, the SPA, Mr. Ware sold 100% of the issued and outstanding stock that he owned in SwellPath to 6D Global.

127.    On March 19, 2015 Mr. Ware owned 2,940,000 or 80% of the issued outstanding shares of SwellPath.

128.    Pursuant to, and in accordance with, the SPA, 6D Global paid a total of $240,000 to Mr. Ware and issued Mr. Ware 240 restricted shares of 6D Global common

stock, par value $0.00001 per share. In consideration for the transfer of Mr. Ware's shares in SwellPath.

129.    6D Global received and continues to hold and own the 2,940,000 SwellPath Shares that Mr. Ware conveyed pursuant to, and in accordance with the SPA.

130.    The SPA also contained an Earnout provision contingent upon certain performance requirements.

131.    Paragraph 1.2(b)(iii) of the SPA provides as follows:

> (A) If during the twelve month period from April 1, 2015 to March 31, 2016, the revenue from the Company per U.S. GAAP exceeds $2,750,000, the buyer shall issue an additional 200,000 shares of Common Stock and cash in the amount of $350,000 to the Sellers in accordance with their pro rata ownership of the Securities set forth in Schedule 1.2 hereto.
> (B) If during the twelve month period from April 1, 2016 to March 31, 2017, the revenue from the Company per U.S. GAAP exceeds $4,000,000, the buyer shall issue an additional 100,000 shares of Common Stock and cash in the amount of $300,000 to the Sellers in accordance with their pro rata ownership of the Securities set forth in Schedule 1.2 hereto.

132.    Paragraph 1.2(b)(iv) of the SPA provides *inter alia* as follows:

> In the event that the Company fails to meet the milestones set forth …above, the Sellers will earn a pro rata portion of the Earnout Consideration provided that the Company achieves at least (A) eight percent (80%) of the revenue requirements; and (b) EBITDA (earnings before interest, taxes, depreciation and amortization) above 12%. In such an event, the Buyer shall issue Earnout Consideration to the Sellers in pro rata portion above eighty percent (80)% upon the amounts set forth in the Sections (iii)(A) and (B) hereof. For instance, for earning 87% of a revenue target, Sellers would earn 87% of the corresponding Earnout Consideration."

18

133.   Paragraph 1.2(b)(v) of the SPA provides *inter alia* as follows:

> Buyer will prepare statements calculating the Earnout Cash payments and Earnout Share issuances due pursuant to this Section 1.2 and deliver such statements (each an "Earnout Statement") to the Sellers within five (5) days of April 30, 2016 and 2017. If within the 30 days following Sellers' receipt of an Earnout Statement or such shorter if the Sellers affirmatively state in writing that they accept the Earnout Statement (such notice must a statement of the basis of the Sellers' objection and the Sellers' best estimate of the proper amount of the Earnout), then the Earnout shall be paid within five (5) Business Days after the earlier to occur of the expiration of such 30 -day period or acceptance of the Earnout Statement by the Sellers.

134.   The Plaintiff failed to provide the Named Defendant or Company within five (5) days of April 30, 2016, the required statement calculating the Earnout Cash payments and Earnout Share issuance for the April 1, 2015 to March 31, 2016 period.

135.   The Plaintiffs intentionally relinquished its known right to calculate its own iteration of the earnings of the Company for this time period.

136.   The Plaintiff knew of the material fact that the SPA gave the Plaintiff this right to perform its own calculation, but only if performed within the strict time constraints contained in SPA.

137.   The Plaintiffs intended to waive its right perform its own calculation because, upon information and belief, they subjectively understood and acknowledged that the Company and the Answering Defendant had attained the revenue milestone contained in the SPA.

138.   The Plaintiffs willingly refrained from enforcing its contracted for opportunity to prepare and present a statement calculating the Earnout Cash payments and

19

Earnout Share issuance for the April 1, 2015 to March 31, 2016 period, that was less than the revenue milestone that was, in any event attained.

139.   The SPA contained a provision governing "Waiver," which provides, as follows:

> "11.4 <u>Amendments. Waivers.</u> This Agreement may be amended or modified at any time and any provision(s) waived, but only by a written instrument executed by all of the parties.

140.   No written instrument was ever executed by all of the parties which waived the Plaintiff's obligations under paragraph1.2(b)(v) of the SPA.

141.   The Answering Defendant and Company are entitled to declaratory judgment that the Plaintiffs have waived its express contractual right to prepare and present a statement calculating the Earnout Cash payments and Earnout Share issuance for the April 1, 2015 to March 31, 2016 period, that was less than the revenue milestone that was, in any event attained.

142.   The Answering Defendant is entitled to declaratory judgment that the Plaintiffs having waived its express contractual right to prepare and present a statement calculating the Earnout Cash payments and Earnout Share issuance for the April 1, 2015 to March 31, 2016 period, that was less than the revenue milestone that was, in any event attained, that the Plaintiffs must pay to Answering Defendant his pro rata share of 200,000 shares of Common Stock and cash in the amount of $350,000.

<u>**AS AND FOR A THIRD COUNTERCLAIM:**</u>
*(Breach of Securities Purchase Agreement: April 1, 2015 to March 31, 2016 )*

143.   The Answering Defendant repeats reiterates and realleges every allegation as if more fully set forth herein.

20

144.    In addition to, and in the alternative to the relief sought in the Second Cause of Action, The Company satisfied the revenue requirements of the SPA for the twelve month period from April 1, 2015 to March 31, 2016, in that the revenue from the Company per U.S. GAAP exceeded $2,750,000.

145.    The Plaintiff failed to issue the additional 200,000 shares of Common Stock and cash in the amount of $350,000 to the Sellers in accordance with their pro rata ownership of the Securities that were sold.

146.    The Answering Defendant has been harmed by the Plaintiff's breach of the SPA.

147.    In the alternative, the Defendants and Company performed the revenue earnings pursuant to paragraph 1.2(b)(iv).

148.    The Plaintiff failed to issue the additional pro rata shares of Common Stock and prorate cash to the Sellers in accordance with their pro rata ownership of the Securities that were sold.

149.    The Answering Defendant has been harmed by the Plaintiff's breach of the SPA.

### AS AND FOR A FOURTH COUNTERCLAIM:
*(Breach of Securities Purchase Agreement April 1, 2016 to March 31, 2017)*

150.    The Answering Defendant repeats reiterates and realleges every allegation as if more fully set forth herein.

151.    The Company acquired new customers and substantially performed its obligations under the SPA.

152.    The Answering Defendant, and those on his team, acquired new customers for the Plaintiffs.

153.    Upon information and belief, the Plaintiffs are still receiving revenues that were created and/or generated by the Answering Defendant and those on his team from April 1, 2016 through to the present date.

154.    Upon information and belief, the Plaintiffs are still receiving revenues that were created and/or generated by the Answering Defendant and those on his team from April 1, 2016 through to March 31, 2017.

155.    Upon information and belief, the Company will satisfy the revenue requirements of the SPA for the twelve month period from April 1, 2016 to March 31, 2017, in that the revenue from the Company per U.S. GAAP will exceeded $4,000,000.

156.    The Plaintiff must issue the additional 100,000 shares of Common Stock and cash in the amount of $300,000 to the Sellers in accordance with their pro rata ownership of the Securities that were sold, in accordance with and pursuant to the SPA.

157.    In the alternative, the Defendants and Company will have performed the revenue earnings pursuant to paragraph 1.2(b)(iv), for the period of April 1, 2016 to March 31, 2017.

158.    The Plaintiff failed to issue the additional pro rata shares of Common Stock and prorate cash to the Sellers in accordance with their pro rata ownership of the Securities that were sold.

159.    The Answering Defendant has been harmed by the Plaintiff's breach of the SPA.

## AS AND FOR A FIFTH COUNTERCLAIM:
*(Breach of Securities Purchase Agreement: Plaintiff's Breach of Covenant of Good Faith and Fair Dealing)*

160.   The Answering Defendant repeats reiterates and realleges every allegation as if more fully set forth herein.

161.   It was implied in the Employment Agreement that the Plaintiff would provide Mr. Ware with the opportunity to meet the quotas and expectations of Plaintiff.

162.   It was implied in the Employment Agreement that the Plaintiff would not frustrate and impede Mr. Ware in his pursuit of meeting the quotas and expectations of Plaintiff.

163.   It was implied in the Employment Agreement that the Plaintiff would provide Mr. Ware with the tools, guidance, and opportunity to meet the quotas and expectations of Plaintiff.

164.   Following the close of the acquisition in March 2015, Mr. Ware assumed the role of "VP of Analytics".

165.   The responsibilities of this role were not completely defined, but it was stated that Mr. Ware would continue to manage the former SwellPath sales team, and be mostly responsible for selling to new customers, and growing existing client accounts.

166.   This entailed leading the technical scoping, and pricing for all deals for the Analytics sales team, and helping strengthen the relationship with VP and C-level stakeholders at potential and existing clients.

167.   At this time Mr. Ware reported up to the Executive Vice President M.S. who oversaw all sales, despite lacking significant sales management experience.

168.   Within a month of the acquisition, the two primary members of the Six Dimensions sales team were terminated.

169.   Within several months they both were employed by a 6D competitor.

170.   Within 60 days of the acquisition it was obvious that the SwellPath business unit would not have improved net profit margins as a result of the acquisition, because "corporate expenses" that were assigned to the business unit at the sole discretion and direction of the Plaintiff were substantial, and dwarfed any net profits obtained by Mr. Ware and the SwellPath team.

171.   This was in spite of the fact that Mr. Ware and the SwellPath team continued to sell at or above previous rates, and maintained gross margins over 50%.

172.   In May 2015, R.R. was hired to be the SVP of Global Sales, and took over management of Mr. Ware.

173.   Mr. Ware continued to manage his team, and was responsible for them reaching their sales quotas.

174.   Mr. Ware and the SwellPath team performed exceptionally well. Large opportunities were cultivated with several new prospects, and many existing accounts were expanded.

175.   In August 2015 R.R. informed Mr. Ware that he would no longer be responsible for management of the Analytics sales team/SwellPath team, and that Mr. Ware would now carry a quota and function the same as the other sales representatives.

176.   Ware was presented with the same quota for 2015 as the other reps, despite having virtually no leads, existing accounts, or opportunities assigned to him (i.e. an empty

pipeline). Most of the representatives had built a solid "pipeline" of deals by this point in the year, that they could expect to close in the 4th calendar quarter.

177.    Mr. Ware began functioning in this capacity, which required cold selling into accounts that had no traction or awareness of 6D, and working with existing personal business contacts to attempt to generate business for the now combined entity, 6D Global.

178.    In September 2016 6D was delisted from NASDAQ in light of the publicly mention and knowledge regarding Benjamin Wey and his indictment, and its impact on 6D and 6dGLOBAL.

179.    Convincing prospects to discuss doing business with 6D, much less getting them to accept a proposal for services, became much more difficult. The issues 6D was publicly facing were brought up often in the sales process with prospects.

180.    Several key employees left the company in July and August 2015, also damaging the 6D product and brand. These included an operational manager, arguably the company's most advanced technical specialist, and the manager of partner relationships.

181.    Following the departure of these individuals, several developers and specialists left as well. Combined with the legal concerns, many industry peers, clients, and prospects questioned the future of 6D and shared these questions with potential employees, clients, and partners.

182.    In December of 2015 Mr. Ware was informed that he would be transferred to another department in the organization at the beginning of the new year.

183.    It was determined by Plaintiff that Mr. Ware needed to function in more of a sales engineering type role, and play a part in evolving the services of the organization.

Ware began 2016 as part of the Center of Excellence (COE), within Plaintiff's organization.

184.    In February 2016 the Plaintiff "disbanded" the COE.

185.    Mr. Ware was not informed who his new manager was, or what changes to his responsibilities there would be.

186.    During this transition period Mr. Ware played a significant role in 6D's absorption of key employees and clients of a competitor agency based in San Diego that had disbanded ("shut their doors") due to financial issues.

187.    Following the absorption, 6D hired several employees from the San Diego competitor.

188.    Mr. Ware was sent, with the said former employees, to visit key clients to attempt to transfer the account and billings to 6D. Most of these accounts were transferred as a result of these visits.

189.    In late March Mr. Ware also attended the Adobe Summit conference Las Vegas, and spent several days working the frontlines of the booth, soliciting new business from conference attendees. This conference is the most critical conference for the type of services 6D sells and performs.

190.    In March 2016, it was implied that all sales personnel and former COE members would report to the interim COO, B.T.

191.    B.T. alluded to this while in San Diego with Mr. Ware for the visit to a major national corporation, and to assess another 6D acquisition target that was based there.

192.    No official or informal documentation on this transfer of management was ever delivered to Mr. Ware.

193.    In late April 2016 B.T. called Mr. Ware on a weekday evening and discussed the situation for roughly 15 minutes.

194.    This was the only 1-on-1 conversation Mr. Ware had with B.T. after becoming his subordinate.

195.    On this call Mr. Ware expressed concerns about SwellPath shareholders not getting their earn-out payment that they were due. B.T. did not promise to seek any resolution or make any commitment to the payment, or any type of discussion regarding the payment.

196.    Mr. Ware promised to otherwise do whatever was asked of him by B.T. for Ware's current position.

197.    Mr. Ware was then terminated from his employment by Plaintiff, effective June 30, 2016.

198.    The Plaintiff's termination of Mr. Ware from his employment, was arbitrary and unreasonable conduct on the part of the Plaintiffs' which prevented Mr. Ware from receiving the fruits of the bargain he made with respect to the Employment Agreement.

199.    The Plaintiff's termination of Mr. Ware from his employment, was arbitrary and unreasonable conduct on the part of the Plaintiffs' which prevented Mr. Ware from receiving the fruits of the bargain he made with respect to the SPA, and the Goodwill Purchase Agreement.

200.    At all relevant times hereto, Mr. Ware was a dutiful and loyal employee.

201.    At all relevant times hereto, Mr. Ware used his best efforts to be a successful employee and to make his employer successful.

202.   Mr. Ware has been damaged by the Plaintiff's breach of its implied covenant of good faith and fair dealing.

WHEREFORE, the Answering Defendant ADAM WARE respectfully requests that the complaint be dismissed with prejudice together with costs and other further relief that This Court deems just and proper, and that ADAM WARE be granted judgment on his counterclaims as follows:

A) As and for the First Counter-Claim in an amount to be determined at trial, but not expected to be less than Seventy-Five ($75,000) thousand dollars, plus interest, costs, and attorneys' fees;

B) As and for the Second Counter-Claim the sum of 160,000 shares of Common Stock in and to 6DGLOBAL or the cash equivalent thereof, and money damages in the sum of Two-Hundred and Eighty ($280,000) thousand dollars or such other amounts that will be determined after the trial of this matter, plus interest, costs, and attorneys' fees;

C) As and for the Third Counter-Claim an amount to be determined at trial but not expected to be less than: i) the sum of 128,000 shares of Common Stock in and to 6DGLOBAL or the cash equivalent thereof; and ii) money damages in the amount of Two-Hundred and Eighty ($224,000) thousand dollars  or such other amounts that will be determined after the trial of this matter, plus interest, costs, and attorneys' fees.

D) As and for the Fourth Counter-Claim an amount to be determined at trial but not expected to be less than: i) the sum of 128,000 shares of Common Stock in and to 6DGLOBAL or the cash equivalent thereof; and ii)  money damages in the amount of Two-Hundred and Eighty ($224,000) thousand dollars or such other amounts that will be determined after the trial of this matter, plus interest, costs, and attorneys' fees;

E) As and for the Fifth Counter-Claim an amount to be determined at trial but not expected to be less than: i) the sum of 228,000 shares of Common Stock in and to 6DGLOBAL or the cash equivalent thereof; and ii) money damages in the amount of Five Hundred ($500,000) thousand dollars, plus interest, costs, and attorneys' fees;

F) Along with any further additional relief that This Court deems just and proper.

Dated: New York, New York
      October 14, 2016

The Law Offices of Peter Sverd, PLLC

By: _____
    Peter Sverd, Esq. (6754)
    225 Broadway, Suite 613
    New York, New York 10007
    Tel.: 646-751-8743
    Fax: 212-964-9516
    Email: psverd@sverdlawfirm.com